IN THE SUPREME COURT OF NORTH CAROLINA

No. 160PA18

Filed 16 August 2019

STATE OF NORTH CAROLINA

v.

JAMES HAROLD COURTNEY, III

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 817 S.E.2d 412 (N.C. Ct. App. 2018), vacating a judgment entered on 9 November 2016 by Judge Donald W. Stephens in Superior Court, Wake County. Heard in the Supreme Court on 15 May 2019 in session in the New Bern City Hall in the City of New Bern pursuant to section 18B.8 of Chapter 57 of the 2017 Session Laws of the State of North Carolina.

*Joshua H. Stein, Attorney General, by Jess D. Mekeel, Special Deputy Attorney General, and Benjamin O. Zellinger, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Amanda S. Zimmer, Assistant Appellate Defender, for defendant-appellee.*

*Tin Fulton Walker & Owen, PLLC, by Matthew G. Pruden; and Devereux & Banzhoff, PLLC, by Andrew B. Banzhoff, for North Carolina Advocates for Justice, amicus curiae.*

HUDSON, Justice

This case comes to us by way of the State's appeal from a unanimous decision of the Court of Appeals holding that defendant's right to be free from double jeopardy was violated when the State voluntarily dismissed defendant's charge after his first

trial ended in a hung jury mistrial. Defendant was retried nearly six years later, after new evidence emerged. The State argues that jeopardy is deemed never to have attached because of the mistrial, so that defendant was not in jeopardy at the time that his second trial began. In the alternative, the State argues that, even if defendant remained in jeopardy following the mistrial, the State's voluntary dismissal without leave did not terminate that jeopardy and that the State was not barred from trying the defendant a second time. We are not persuaded by either of the State's arguments and, thus, affirm the Court of Appeals.

Today we recognize, in accordance with double jeopardy principles set out by this Court and the United States Supreme Court, that jeopardy attaches when the jury is empaneled and continues following a mistrial until a terminating event occurs. We hold that when the State enters a voluntary dismissal under N.C.G.S. § 15A-931 after jeopardy has attached, jeopardy is terminated in the defendant's favor, regardless of the reason the State gives for entering the dismissal. The State cannot then retry the case without violating a defendant's right to be free from double jeopardy. When the State dismisses a charge under section 15A-931 after jeopardy has attached, jeopardy terminates. Thus, we affirm the decision of the Court of Appeals vacating defendant's conviction on double jeopardy grounds and remand to the trial court for further proceedings consistent with this opinion.

Background

Defendant was arrested on 2 November 2009 for the murder of James Carol Deberry, which was committed three days earlier on 31 October 2009; he was indicted on 30 November 2009. Defendant's trial began on 6 December 2010, at which point a jury was empaneled and evidence presented. On 9 December 2010, the trial court declared a mistrial after the jury foreperson reported that the jury was hopelessly deadlocked. Defendant was released the same day. Following the hung jury mistrial declaration, the trial court continued the case so the State could decide whether it would re-try defendant on the murder charge. The trial court held status hearings on 16 December 2010 and on 10 February 2011. The trial court's orders from both hearings noted that the case had ended in mistrial and that it would be continued to another status hearing for the State to decide whether it intended to re-try defendant. Ultimately, the State entered a dismissal of the murder charge against defendant on 14 April 2011[1], by filing form AOC-CR-307 with the trial court. Like many similar forms, form AOC-CR-307 includes multiple options; the State may use the form to enter a dismissal, a dismissal with leave, or a notice of reinstatement for a case that had previously been dismissed with leave. The State left blank the sections for dismissal with leave and reinstatement but checked the box in the "dismissal" section next to the statement "[t]he undersigned prosecutor enters a dismissal to the above

---

[1] The parties' filings disagree on which day in April 2011 the State entered its dismissal. However, the copy of the form included in the record appears to be dated 14 April 2011, which is also the date referenced in the Court of Appeals opinion. Any disagreement over the date does not impact the result of the case.

charge(s) and assigns the following reasons." The State checked the box marked "other" in the list of reasons for dismissal and wrote underneath: "hung jury, state has elected not to re-try case." In addition, the State modified a statement on the form to reflect the circumstances so that it reads: "A jury has ~~not~~ been impaneled ~~nor~~ and has evidence [sic] been introduced." The State's voluntary dismissal of the charge was signed by the prosecutor.

Several years passed, and the State discovered additional evidence related to the case. In 2013 and 2014, fingerprints and DNA from a cigarette found at the scene of the murder were found to belong to an individual named Ivan McFarland. A review of the cell phone activity for McFarland and defendant revealed that defendant had McFarland's cell phone number in his phone, that five calls had been made between the two phones on the night of the murder, and that cell phone tower data placed both men in the vicinity near where the murder occurred.

A second warrant for defendant's arrest for murder was issued on 16 June 2015, and defendant was re-indicted on 6 July 2015.[2] On 7 October 2016, defendant filed a motion to dismiss the indictment based on N.C.G.S. § 15A-931, the voluntary dismissal statute, on estoppel and double jeopardy grounds, as well as a second motion to dismiss the murder charge for violating defendant's rights to a speedy trial

---

[2] McFarland was also indicted for the murder, and, as noted by the Court of Appeals, his trial was apparently scheduled to take place after defendant's trial. However, the record is silent as to the outcome of McFarland's trial.

under the state and federal constitutions. On 10 October 2016, the trial court in open court denied defendant's motion to dismiss based on double jeopardy.[3] Defendant was tried for the second time 31 October 2016 through 9 November 2016 in the Superior Court in Wake County. At that trial, the jury found defendant guilty of second-degree murder, and the trial court sentenced defendant to between 220 and 273 months in prison.

Defendant appealed to the Court of Appeals, where he argued that his right to be free from double jeopardy was violated when the State re-tried him on the same charge following its voluntary dismissal of the charge after defendant's first trial ended in a hung jury mistrial. In a unanimous opinion filed on 15 May 2018, the Court of Appeals agreed with defendant that his second prosecution violated the Double Jeopardy Clause of the United States Constitution. *State v. Courtney*, 817 S.E.2d 412, 422 (N.C. Ct. App. 2018) The Court of Appeals noted that the Double Jeopardy Clause does not prevent the State from retrying a defendant following a hung jury mistrial, but it listed three categories of jeopardy-terminating events that do bar a subsequent prosecution—jury acquittals, judicial acquittals, and "certain non-defense-requested terminations of criminal proceedings, such as non-procedural dismissals or improperly declared mistrials, that for double jeopardy purposes are

---

[3] Defendant's motion to dismiss based on speedy trial grounds was denied in open court on 31 October 2016, and an order with findings of fact and conclusions of law was filed on 3 November 2016.

functionally equivalent to acquittals." *Id.* at 418 (citing *Lee v. United States*, 432 U.S. 23, 30, 97 S. Ct. 2141, 2145, 53 L. Ed. 2d 80, 87 (1977); *United States v. Scott*, 437 U.S. 82, 99–100, 98 S. Ct. 2187, 2198, 57 L. Ed. 2d 65, 79–80 (1978)). The panel concluded that the dismissal entered by the State in this case fell within this third category, "interpret[ing] section 15A-931 as according that dismissal the same constitutional finality and conclusiveness as an acquittal for double jeopardy purposes." *Id.* at 419. Thus, the Court of Appeals concluded that the trial court had erred in denying defendant's motion to dismiss his 2015 indictment, and it vacated defendant's conviction.[4] On 20 September 2018, we allowed the State's petition for discretionary review of the decision of the Court of Appeals.

## Analysis

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution states that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. The U.S. Constitution's guaranty against double jeopardy applies to the states through the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062, 23 L. Ed. 2d 707, 716 (1969), and we have long recognized that the Law of the Land Clause

---

[4] Defendant raised three other issues before the Court of Appeals. Defendant argued, in the alternative, that the trial court erred in denying his motion to dismiss based on a violation of his right to a speedy trial. In addition, defendant argued that certain evidence was erroneously admitted at trial and that his statutory right not to be tried within a week of his arraignment was violated. Because the Court of Appeals found defendant's double jeopardy issue to be dispositive, it did not address his remaining three arguments, none of which are the subject of this appeal. *Courtney*, 817 S.E.2d at 416.

found in our state's constitution also contains a prohibition against double jeopardy, N.C. Const. art. I, § 19; *State v. Sanderson*, 346 N.C. 669, 676, 488 S.E.2d 133, 136 (1997); *see also State v. Crocker*, 239 N.C. 446, 80 S.E.2d 243 (1954). "The underlying idea [of this constitutional protection] is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199, 204 (1957). In situations where jeopardy has not attached or where, having attached, jeopardy has not yet been terminated, the State retains the power to proceed with a prosecution. But under the Double Jeopardy Clause, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106, 123 S. Ct. 732, 736, 154 L. Ed. 2d 588, 595 (2003) (citation omitted).

When the Double Jeopardy Clause is implicated, an individual's right to be free from a second prosecution is not up for debate based upon countervailing policy considerations. *See Burks v. United States*, 437 U.S. 1, 11 n.6, 98 S. Ct. 2141, 2147 n.6, 57 L. Ed. 2d 1, 9 n.6 (1978) ("[W]here the Double Jeopardy Clause is applicable, its sweep is absolute. There are no 'equities' to be balanced, for the Clause has

declared a constitutional policy, based on grounds which are not open to judicial examination.").

We review *de novo* a defendant's claim that a prosecution violated the defendant's right to be free from double jeopardy. *State v. Sparks*, 362 N.C. 181, 186, 657 S.E.2d 655, 658 (2008). The United States Supreme Court has recognized a two-pronged analysis to determine whether a violation of the Double Jeopardy Clause has occurred: "First, did jeopardy attach to [the defendant]? Second, if so, did the proceeding end in such a manner that the Double Jeopardy Clause bars his retrial?" *Martinez v. Illinois*, 572 U.S. 833, 838, 134 S. Ct. 2070, 2074, 188 L. Ed. 2d 1112, 1117 (2014).

The State asks this Court to hold that neither of these two preconditions for a double jeopardy violation were present here and that, therefore, the re-trial in this case did not offend double jeopardy principles. First, the State argues that, notwithstanding the fact that the defendant was tried once for this murder charge, jeopardy never attached under these circumstances, meaning that jeopardy attached for the first time when the jury was empaneled in the second trial. Second, the State contends that, even if jeopardy did attach when the jury was empaneled and sworn in the first trial, the prosecution's voluntary dismissal of the indictment under N.C.G.S. § 15A-931 was not an event that terminated jeopardy. We are not persuaded by either argument and conclude that the unanimous panel below correctly held that the second trial of defendant violated his rights under the Double Jeopardy Clause.

*I. Attachment and Continuation of Jeopardy*

"There are few if any rules of criminal procedure clearer than the rule that 'jeopardy attaches when the jury is empaneled and sworn.'" *Martinez*, 572 U.S. at 839, 134 S. Ct. at 2074, 188 L. Ed. 2d at 1117 (citations omitted). *See also State v. Shuler*, 293 N.C. 34, 42, 235 S.E.2d 226, 231 (1977) ("Jeopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) on a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been empaneled and sworn.").

Though retrials may proceed in certain circumstances without violating the Due Process Clause, such as when a trial ends in mistrial or when a defendant secures the relief of a new trial after an original conviction is vacated on appeal,[5] *see Richardson v. United States*, 468 U.S. 317, 326, 104 S. Ct. 3081, 3086, 82 L. Ed. 2d 242, 251 (1984), "it became firmly established by the end of the 19th century that a defendant could be put in jeopardy even in a prosecution that did not culminate in a conviction or an acquittal, and this concept has been long established as an integral part of double jeopardy jurisprudence." *Crist v. Bretz*, 437 U.S. 28, 34, 98 S. Ct. 2156, 2160, 57 L. Ed. 2d 24, 30 (1978).

---

[5] Because we recognize that the State may proceed with a retrial when a defendant secures the relief of a new trial after an original conviction is vacated on appeal, the dissent's assertion that our holding "would also apply to cases reversed on appeal" is incorrect. Our holding is limited to the facts presented here.

In *Richardson v. United States*, the United States Supreme Court, recognizing that jeopardy attaches when a jury is sworn, held that a hung jury mistrial does not terminate that jeopardy in the defendant's favor. 468 U.S. at 326, 104 S. Ct. at 3086, 82 L. Ed. 2d at 251. Specifically, the Court stated

> we reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected. The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree.

*Id.* The *Richardson* Court rejected the defendant's implicit argument that his hung jury mistrial was a jeopardy-terminating event but, importantly, recognized the fact that jeopardy had attached and remained attached following the mistrial. *Id.* at 325, 104 S. Ct. at 3086, 82 L. Ed. 2d at 251 ("Since jeopardy attached here when the jury was sworn, petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy. But this proposition is irreconcilable with [the Court's prior cases], and we hold on the authority of these cases that the failure of the jury to reach a verdict is not an event which terminates jeopardy.") (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S. Ct. 1349, 1353, 51 L. Ed.2d 642 (1977)).

The principle affirmed in *Richardson* that the original jeopardy continues, rather than terminates, following a hung jury mistrial, has been reaffirmed in more

recent statements from the Court. *See Yeager v. United States*, 557 U.S. 110, 118, 129 S. Ct. 2360, 2366, 174 L. Ed. 2d 78, 87 (2009) ("[W]e have held that the second trial does not place the defendant in jeopardy 'twice.' Instead, a jury's inability to reach a decision is the kind of 'manifest necessity' that permits the declaration of a mistrial and the *continuation of the initial jeopardy* that commenced when the jury was first impaneled.") (emphasis added) (citations omitted).

The State concedes that jeopardy attaches when a jury is empaneled; however, it argues that the occurrence of a hung jury mistrial sets in motion a legal fiction in which the clock is wound back, placing the case back in pre-trial status such that jeopardy is deemed never to have attached.[6] The State's argument posits two necessary conditions.

---

[6] At oral argument, counsel for the State instead argued that jeopardy "unattaches," a phenomenon that the State specifically disclaims in its brief. *Compare* New Brief for the State at 8, *State v. Courtney*, No. 160PA18 (N.C. November 21, 2018) ("Although the court below believed the State was contending jeopardy 'unattached' with the mistrial, the State's actual argument is that, based on case law from this Court, the mistrial created the legal fiction that jeopardy *never attached* in the first place.") (citation and footnote omitted) (emphasis in original) *with* Oral Argument at 55:08–55:18, 57:36–57:51, *State v. Courtney*, No. 160PA18 (N.C. May 15, 2019) ("I would ask this Court to look at this Court's holding in *State v. Lachat*, which found that when there is a mistrial, jeopardy unattaches."; "After a hung jury, the jeopardy in that situation unattaches and then when the State made this dismissal, the State was in a pretrial procedure at that point, and therefore the State could bring back these charges and retry the defendant.") (emphases added). While we primarily focus here on the State's contention in its brief that jeopardy never attached, we also find no legal support for its alternative formulation that jeopardy "unattaches" following a hung jury mistrial. Both arguments—that jeopardy never attached and that jeopardy unattached—are foreclosed by the continuing jeopardy principle embraced by the United States Supreme Court in *Richardson*.

First, the State argues that the United States Supreme Court has never held that jeopardy continues following a mistrial, notwithstanding the clear language to the contrary found in *Richardson* and *Yeager*. The State contends that the multiple statements by the Court appearing to embrace the doctrine of continuing jeopardy are *dicta* because a number of those cases did not squarely address the Double Jeopardy Clause's limits on prosecutors' ability to bring a second prosecution on the same charge following a declaration of a hung-jury mistrial that was not sought by the defendant. The State argues that even *Richardson*'s continuing jeopardy discussion is "[a]rguably . . . dictum because by finding a mistrial was not a terminating event, it was immaterial whether or not jeopardy had continued, as opposed to the case being placed back in the pre-trial posture[.]"

The second element of the State's argument that jeopardy did not attach appears to be as follows: because the U.S. Supreme Court, in the State's view, has not formally adopted the continuing jeopardy doctrine, this Court is free to follow its own precedent on the matter. The State further argues that this Court has explicitly held that upon the declaration of a hung jury mistrial, a legal fiction goes into effect under which jeopardy is deemed never to have attached at the first trial, meaning that no jeopardy exists to continue and eventually terminate. Thus, the State contends that, following his 2010 trial, defendant was placed in precisely the same position in which he stood before trial, and it was only when the jury was empaneled at defendant's second trial in 2016 that jeopardy first attached. We find both components of the

State's proffered theory that defendant was not in jeopardy at the time of the mistrial to be wholly without merit.

In *Richardson*, the Supreme Court stated multiple times that jeopardy, which existed prior to a mistrial, does not terminate following the mistrial. The Court in *Richardson* "reaffirm[ed] the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates *the original jeopardy to which petitioner was subjected*," and reiterated that "*jeopardy does not terminate when the jury is discharged* because it is unable to agree." *Richardson,* 468 U.S. at 326, 104 S. Ct. at 3086, 82 L. Ed. 2d at 251 (emphases added). The State argues, however, that merely because the *Richardson* Court held that "jeopardy does not terminate" following a hung jury mistrial "does not necessarily mean that jeopardy had continued" because, under the State's theory, jeopardy would not terminate because jeopardy would no longer be deemed in effect. While this is a creative argument, it is foreclosed by a commonsense reading of *Richardson*.

First, the *Richardson* Court clearly contemplates the continuation of jeopardy at the time of the mistrial. If the Court had intended to say that jeopardy, which attaches when the jury is empaneled, can—only in the singular context of a hung jury mistrial—be retroactively deemed never to have attached, it could have done so. Instead, the Court stated that the *original jeopardy* did not terminate, thus signaling that jeopardy continued. We see no logical interpretation of the Court's declaration

in *Richardson* that the original jeopardy did not terminate other than to acknowledge that the original jeopardy *continued*.[7]

Second, the outcome and legal significance of *Richardson* cannot be separated from its text. The continuing jeopardy doctrine reaffirmed by *Richardson* provided a rationale for the longstanding practice of permitting retrial following a hung jury mistrial that was consistent with the guarantee of the Double Jeopardy Clause. *See Richardson*, 468 U.S. at 324, 104 S. Ct. at 3085, 82 L. Ed. 2d at 250 (citing *Logan v. United States*, 144 U.S. 263, 297–98, 12 S. Ct. 617, 627–28, 36 L. Ed. 429, 441 (1892); *Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 832, 54 L. Ed. 2d 717, 730 (1978)).

The State here argues against the existence of a legal principle that secures the government's right to retry a defendant following mistrial in the face of legal opposition to those retrials on double jeopardy grounds. The State rejects the principle that permitted the Government to prevail in *Richardson*—that jeopardy

---

[7] The dissenting justice in *Richardson* also acknowledged the Court's adoption of the continuing jeopardy principle. Writing in dissent in *Richardson*, Justice Brennan argued that the majority's approach "improperly ignores the realities of the defendant's situation and *relies instead on a formalistic concept of 'continuing jeopardy.'*" *Richardson*, 468 U.S. at 327, 104 S. Ct. at 3087, 82 L. Ed. 2d at 252 (Brennan, J., concurring in part and dissenting in part) (emphasis added). *See also Yeager v. United States*, 557 U.S. 110, 129, 129 S. Ct. 2360, 2372, 174 L. Ed. 2d 78, 94 (2009) (Scalia, J., dissenting) ("This Court has extended the protections of the Double Jeopardy Clause by holding that jeopardy attaches earlier: at the time a jury is empanelled and sworn.. . . . [D]ischarge of a deadlocked jury does not 'terminat[e] the original jeopardy.' *Under this continuing-jeopardy principle*, retrial after a jury has failed to reach a verdict is not a new trial but part of the same proceeding.") (emphasis added) (footnote omitted) (citations omitted).

continues, rather than terminates, following a mistrial—in favor of an argument that, following a mistrial, jeopardy neither continues nor terminates but rather is deemed never to have attached in the first place. Thus, the State's argument that the Supreme Court has not embraced the principle of continuing jeopardy following a mistrial is unsupported by either the text or context of *Richardson*.

The State also points to *United States v. Sanford*, 429 U.S. 14, 97 S. Ct. 20, 50 L. Ed. 2d 17 (1976) (per curiam) to support its argument that, following a hung jury mistrial, a defendant is placed back in a pre-trial posture and jeopardy is deemed not to have attached. In *Sanford*, defendants were indicted for illegal game hunting, and their trial resulted in a hung jury mistrial. *Id.* at 14, 97 S. Ct. at 20, 50 L. Ed. 2d at 19. Four months later, as the Government was preparing to retry the case, the trial court granted the defendants' motion to dismiss the indictment, concluding that the Government had consented to the activities described in the indictment. *Id.* The Government appealed. *Id.* The Supreme Court reversed a decision of the circuit court dismissing the Government's appeal on double jeopardy grounds, concluding that "[t]he dismissal in this case, like that in [*Serfass v. United States*, 420 U.S. 377, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975)], was prior to a trial that the Government had a right to prosecute and that the defendant was required to defend," *id.* at 16, 97 S. Ct. at 21–22, 50 L. Ed. 2d at 20, and that "in such cases a trial following the Government's successful appeal of a dismissal is not barred by double jeopardy," *id.* at 16, 97 S. Ct. at 22, 50 L. Ed. 2d at 20.

Though the State is correct that *Sanford* includes language analogizing the dismissal in that case to the pretrial dismissal considered in *Serfass*, *see id.* at 16, 97 S. Ct. at 21, 50 L. Ed. 2d at 20, there are two reasons why *Sanford* does not control here. First, *Richardson* was decided eight years *after Sanford*, meaning that if the two opinions were in conflict, *Richardson* would control. The Court in *Sanford* issued only a brief *per curiam* opinion without oral argument, *see id.* at 16, 97 S. Ct. at 22, 50 L. Ed. 2d at 20 (Brennan & Marshall, JJ., dissenting from summary reversal and indicating that they would have set the case for oral argument); however, the Court included a more robust analysis of double jeopardy principles in its later opinion in *Richardson*.

Second, the result in *Sanford* is consistent with the principle discussed two years later in *United States v. Scott*. In *Scott*, the Court held that the State was permitted to appeal a defendant-requested dismissal of charges after jeopardy had attached. 437 U.S. at 101, 98 S. Ct. at 2198–99, 57 L. Ed. 2d at 80–81. The Court explained that

> the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant. . . . [T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.

*Id.* at 98–99, 98 S. Ct. at 2198, 57 L. Ed. 2d at 79. Unlike in *Sanford* and *Scott*, the

dismissal here was entered unilaterally by the State rather than by a trial court granting defendant's request. Thus, this line of cases is not applicable to the facts before us.

We now move to the second element of the State's theory that jeopardy attached for the first time at defendant's second trial. As the sole support for its theory that this Court has adopted the principle that jeopardy is deemed never to have previously attached at the point that the trial court declares a mistrial, the State points to a single statement from this Court's decision in *State v. Lachat*, 317 N.C. 73, 343 S.E.2d 872 (1986). The State notes that we stated in *Lachat* that "[w]hen a mistrial is declared properly for such reasons [as a deadlocked jury], 'in legal contemplation there has been no trial.'" 317 N.C. at 82, 343 S.E.2d at 877 (quoting *State v. Tyson*, 138 N.C. 627, 629, 50 S.E. 456, 456 (1905)).

The *Lachat* Court quoted this phrase from our 1905 decision in *State v. Tyson*, 138 N.C. at 629, 50 S.E. at 456. In *Tyson*, we held that a defendant's double jeopardy right was not violated when the jury was empaneled, the trial court declared a mistrial due to the intoxication of one of the jurors, and the defendant was re-tried and convicted. *Id.* We stated in *Tyson* that

> [w]here a jury has been impaneled and charged with a capital felony, and the prisoner's life put in jeopardy, the court has no power to discharge the jury, and hold the prisoner for a second trial, except in cases of absolute necessity. Where such absolute necessity appears from the findings of the court, and in consequence thereof the jury has been discharged, then in legal contemplation there has

been no trial.

*Id.* (citation omitted). Significantly, though we stated that there had been "no trial" in this situation, such that the defendant was not subject to double jeopardy, we did not state that, due to the mistrial, there had been "no jeopardy." To the contrary, by noting that a jury may be discharged only "in cases of absolute necessity" after "the prisoner's life [has been] put in jeopardy," we implicitly acknowledged—from the post-mistrial perspective—that the defendant in *Tyson* had been in jeopardy during his first trial.

Eight decades later in *Lachat*, this Court quoted the phrase from *Tyson* in a somewhat different context. In *Lachat*, we held that a defendant's second trial should have been barred due to former jeopardy[8] based on the particular findings of fact and conclusions made by the trial court. *Lachat*, 317 N.C. at 74, 83–84, 343 S.E.2d at 872, 877. Our ruling in *Lachat* was a fact-specific determination that the trial court had erred in declaring a mistrial before making a proper determination on whether the jury was, in fact, hopelessly deadlocked. *Id.* at 84–85, 343 S.E.2d at 878. In setting out the applicable law in that case, we stated that the double jeopardy principle

> is not violated where a defendant's first trial ends with a mistrial which is declared for a manifest necessity or to serve the ends of public justice. "It is axiomatic that a jury's failure to reach a verdict due to a deadlock is a 'manifest necessity' justifying the declaration of a mistrial." When a

---

[8] *Lachat* was not decided under the Double Jeopardy Clause of the United States Constitution but rather "on adequate and independent grounds of North Carolina law." 317 N.C. at 77, 343 S.E.2d at 874.

mistrial is declared properly for such reasons, "in legal contemplation there has been no trial."

*State v. Lachat*, 317 N.C. at 82, 343 S.E.2d at 877 (first citing and quoting *State v. Simpson*, 303 N.C. 439, 447, 279 S.E.2d 542, 547 (1981), then quoting *Tyson*, 138 N.C. at 629, 50 S.E. at 456). Thus, the Court opined that following a properly declared mistrial, including a mistrial declared due to a hopelessly deadlocked jury, "in legal contemplation there has been no trial." Because *Lachat* explicitly involved an *improperly* declared mistrial, any discussion of the consequences stemming from a *properly* declared mistrial is not conclusive on this point. More importantly, the "no trial" language quoted in *Lachat* again falls far short of declaring that a defendant in such a situation has not been placed in jeopardy. Nor could this Court have made such a statement, given that, just two years earlier, the Supreme Court in *Richardson* had embraced the doctrine that jeopardy continues following a hung jury mistrial. [9]

---

[9] In its brief, the State also references *State v. Sanders*, 347 N.C. 587, 496 S.E.2d 568 (1998), the most recent case from this Court to quote *Tyson*'s "no trial" language, though as with *Lachat*, it provides no analysis of the case. In *Sanders*, we upheld the propriety of a trial court's declaration of a mistrial due to the "manifest necessity" of jury misconduct in a sentencing proceeding, such that the defendant's double jeopardy rights would not be violated by a subsequent sentencing proceeding. *Id.* at 599–601, 496 S.E.2d at 576–77. In setting forth the reasoning for our conclusion, we discussed the right of a defendant to be free from double jeopardy and noted that this right is not violated when a mistrial is declared due to manifest necessity. *Id.* at 599, 496 S.E.2d at 576. Then we stated that "[w]hen a mistrial has been declared properly, 'in legal contemplation there has been no trial.' " *Id.* (quoting Tyson, 138 N.C. at 629, 50 S.E. at 456). As is the case with *Tyson* and *Lachat*, *Sanders* includes no statement that jeopardy is deemed, following the mistrial, never to have attached in the first place. Like *Lachat*, *Sanders* also post-dated *Richardson*, which would have foreclosed any holding that jeopardy did not remain attached following a mistrial.

This Court's prior statements that "in legal contemplation there has been no trial" were made in the context of explaining why the State is permitted to retry a defendant following a properly declared mistrial, which was also the context for the U.S. Supreme Court's embrace of the continuing jeopardy doctrine in *Richardson*. The State contends that "[i]f a hung jury creates the legal fiction that 'there has been no trial,' then by definition a jury was never empaneled and defendant was never placed in jeopardy." But in our view the State reads this explanatory phrase from our prior opinions too expansively. Contrary to the State's view, this Court did not with those eight words adopt an exception to the longstanding rule recognized by this Court and the United States Supreme Court that jeopardy attaches when a jury is empaneled, nor did we hold that a legal fiction acts to invalidate the jeopardy that a defendant, even one who is later retried, did in fact experience at a first trial.[10]

---

[10] Although the State contends this Court already adopted its proffered legal fiction as a holding in *Lachat*, it also seeks to highlight the usefulness of legal fictions by analogizing this situation before us to other situations where legal fictions have been employed. In a footnote on legal fictions in its brief, the State contends that "[h]ere, resetting the proceedings after a hung jury mistrial to pre-trial status is not all that different than other legal fictions such as *nunc pro tunc* orders and the relation-back doctrine." One of the cases the State cites in this discussion is *Costello v. Immigration & Naturalization Serv.*, 376 U.S. 120, 130, 84 S. Ct. 580, 586, 11 L. Ed. 2d 559, 565 (1964). But *Costello* declined to apply the relation-back doctrine in the manner urged by the government in that case and disparaged the legal fiction concept in the process. *Id.* at 130, 84 S. Ct. at 586, 11 L. Ed. 2d 559, 565–66 ("The relation-back concept is a legal fiction at best, and even the respondent concedes that it cannot be 'mechanically applied.' . . . This Court declined to apply the fiction in a deportation context in [a prior] case, and we decline to do so now."). The Court further stated that, "[i]n this area of the law, involving as it may the equivalent of banishment or exile, we do well to eschew technicalities and fictions and to deal instead with realities." *Id.* at 131, 84 S. Ct. at 587, 11 L. Ed. 2d at 566.

The State argues that "the continuing jeopardy doctrine . . . is a slender reed upon which to base a determination that defendant's double jeopardy rights were violated." On the contrary, we conclude that this century-old statement from this Court is a "slender reed" intended only to explain the State's ability to re-try a defendant following a mistrial. This Court has not adopted an elaborate legal fiction under which jeopardy attaches when a jury is empaneled and then simply ceases to apply when the trial court declares a mistrial. This Court has not embraced the proposition proffered by the State and does not do so today. Instead, relying upon the commonsense meaning of binding Supreme Court precedents, we reaffirm that jeopardy continues following a mistrial until the occurrence of a jeopardy-terminating event.

Because we conclude that the original jeopardy continued following defendant's mistrial, we turn to the second part of our analysis and consider whether the State's subsequent dismissal of defendant's murder indictment terminated the original jeopardy, such that defendant's second trial placed him in jeopardy a second time in violation of both the federal and state constitutions.

## II. *Voluntary Dismissal Terminating Jeopardy*

Defendant concedes that the State, under the doctrine of continuing jeopardy, could have retried him following the mistrial without violating the Double Jeopardy Clause. He argues, however, that the State's unilateral decision to enter a voluntary dismissal of the murder indictment under N.C.G.S. § 15A-931 after jeopardy had

attached was an event that terminated defendant's original jeopardy, thus preventing the State from subsequently retrying him. We hold that where, as here, the State dismisses a charge under section 15A-931 after jeopardy has attached, a defendant's right to be free from double jeopardy under the federal and state constitutions is violated if the State initiates a subsequent prosecution on the same charge. Thus, we affirm the holding of the Court of Appeals that the State's dismissal of a charge under section 15A-931 is binding on the state and is tantamount to an acquittal, making it a jeopardy-terminating event for double jeopardy purposes.

North Carolina has two statutes governing the State's ability to voluntarily dismiss charges, either with or without leave to reinstate those charges. Section 15A-931 of the General Statutes ("Voluntary dismissal of criminal charges by the State.") reads as follows:

> Except as provided in G.S. 20-138.4,[11] the prosecutor may dismiss any charges stated in a criminal pleading including those deferred for prosecution by entering an oral dismissal in open court before or during the trial, or by filing a written dismissal with the clerk at any time. The clerk must record the dismissal entered by the prosecutor and note in the case file whether a jury has been impaneled or evidence has been introduced.

N.C.G.S. § 15A-931(a) (2017).

---

[11] The statute referenced herein applies only to implied-consent and impaired driving with license revoked offenses and requires that a voluntary dismissal by the State be accompanied by detailed reasons and other information related to the case. N.C.G.S. § 20-138.4(a)(1), (b) (2017).

By contrast, N.C.G.S. § 15A-932 ("Dismissal with leave when defendant fails to appear and cannot be readily found or pursuant to a deferred prosecution agreement.") allows a prosecutor to dismiss charges with leave to reinstate them under specific circumstances. Under section 15A-932,

> The prosecutor may enter a dismissal with leave for nonappearance when a defendant:
>
> > (1) Cannot be readily found to be served with an order for arrest after the grand jury had indicted him; or
> >
> > (2) Fails to appear at a criminal proceeding at which his attendance is required, and the prosecutor believes the defendant cannot be readily found.

N.C.G.S. § 15A-932(a) (2017) and

> The prosecutor may enter a dismissal with leave pursuant to a deferred prosecution agreement entered into in accordance with the provisions of Article 82 of this Chapter.

*Id.* § 15A-932(a1). A prosecutor may reinstate charges dismissed with leave under these provisions upon apprehension of a defendant who previously could not be found or if a defendant fails to comply with the terms of a deferred prosecution agreement. *Id.* § 15A-932(d), (e).

Section 15A-932 establishes a few specifically enumerated circumstances in which the State may dismiss a charge with leave to refile, such that a dismissal under this statute does not necessarily contemplate the end of the prosecution. All other voluntary dismissals entered by the State are governed by section 15A-931. In *State*

*v. Lamb*, 321 N.C. 633, 641, 365 S.E.2d 600, 604 (1988) we contrasted the effect of these two provisions, nothing that section 15A-931 provides "a simple and final dismissal which terminates the criminal proceedings under that indictment" (citing N.C.G.S. § 15A-931 official cmt.) while a dismissal under section 15A-932 "results in removal of the case from the court's docket, but the criminal proceeding under the indictment is *not* terminated." (emphasis in original). Before a defendant has been tried, "[s]ection 15A-931 does not bar the bringing of the same charges upon a new indictment," *id.* but, even in a pre-attachment context, the key characteristic of a dismissal entered under 15A-931 is its finality. In the context of an analysis of the now-repealed Speedy Trial Act in *Lamb*, we noted that the finality provided by the statute precluded consideration of any time that accrued between the time when a first indictment was dismissed under section 15A-931 and a new indictment was secured for purposes of a statutory speedy trial claim; by contrast, no such consequence resulted from a section 15A-932 dismissal.[12]

It appears that the legislature contemplated the possibility that a dismissal under section 15A-931 might have double jeopardy implications and, further, that the State might enter a voluntary dismissal sometime other than during the middle of a

---

[12] In *Lamb*, the State entered a pretrial dismissal of the indictment "[w]ith [l]eave [p]ending the completion of the investigation." 321 N.C. at 635, 365 S.E.2d at 601. However, because none of the circumstances described in section 15A-932 actually occurred, we concluded that the "with leave" language was merely surplusage and that the dismissal in fact was entered under section 15A-931. *Id.* at 642, 365 S.E.2d at 604–05.

trial. Section 15A-931(a) dictates that "[t]he clerk must record the dismissal entered by the prosecutor *and note in the case file whether a jury has been impaneled or evidence has been introduced*" and directs that the State may dismiss a charge "by entering an oral dismissal in open court before or during the trial, or by filing a written dismissal with the clerk *at any time*." (Emphases added). The State suggested at oral argument that the statutory language contemplating the attachment of jeopardy was intended only to ward against the double jeopardy implications of a voluntary dismissal entered by the State *mid-trial*. But this contention is undermined by the specific language in the statute authorizing entry of a dismissal before a trial, during a trial, or *at any time.*

While the text of section 15A-931 fully supports the conclusion that the legislature intended a dismissal under this section to have such a degree of finality that double jeopardy protections would come into play, this reading finds further support in the official commentary to the statute. *See State v. Jones*, 819 S.E.2d 340, 344 (N.C. 2018) ("The commentary to a statutory provision can be helpful in some cases in discerning legislative intent." (quoting *Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 425, 426 S.E.2d 685, 689 (1993)); *State v. Williams*, 315 N.C. 310, 327, 338 S.E.2d 75, 85 (1986) ("Although the official commentary was not drafted by the General Assembly, we believe its inclusion in The Criminal Procedure Act is some indication that the legislature expected and intended for the courts to turn to it for guidance when construing the Act.").

The Criminal Code Commission provided the following commentary to section 15A-931:

> The case of *Klopfer v. North Carolina*, 386 U.S. 213, held in 1967, that our system of "nol pros" was unconstitutional when it left charges pending against a defendant and he was denied a speedy trial. Thus the Commission here provides for a simple and final dismissal by the solicitor. No approval by the court is required, on the basis that it is the responsibility of the solicitor, as an elected official, to determine how to proceed with regard to pending charges. This section does not itself bar the bringing of new charges. That would be prevented if there were a statute of limitations which had run, *or if jeopardy had attached when the first charges were dismissed.*

N.C.G.S. § 15A-931 (2017) (official cmt.) (emphasis added). The explicit statement in the commentary that the bringing of new charges "would be prevented . . . if jeopardy had attached when the first charges were dismissed," *id.*, provides further insight into the legislature's intent for a 15A-931 dismissal. This commentary suggests that such a dismissal would be viewed as a jeopardy-terminating event for purposes of the Double Jeopardy Clause.

In reaching its conclusion that the State's dismissal of defendant's murder charge was a terminating event that prevented him from being retried, the Court of Appeals "f[ou]nd further guidance from [this] Court's explanation and application of the 'State's election' rule." *State v. Courtney*, 817 S.E.2d 412, 420 (N.C. Ct. App. 2018) (citing *State v. Jones*, 317 N.C. 487, 346 S.E.2d 657 (1986)). Like the panel below, we also find the rule discussed in *Jones* to be instructive here. In *Jones*, this Court

reviewed the case of a defendant whose indictment arguably[13] was sufficient to charge him with first-degree rape but who was arraigned only on the charge of second-degree rape. *Jones*, 317 N.C. at 491–92, 346 S.E.2d at 659–60. No discussion at all of a first-degree rape charge occurred until after the close of all evidence, when the prosecutor proposed an instruction on first-degree rape. *Jones*, 317 N.C. at 491, 346 S.E.2d at 659. Jones was ultimately convicted of first-degree rape, *id.*, and appealed his conviction to this Court. In our decision vacating defendant's conviction for first-degree rape, we held that

> by unequivocally arraigning the defendant on second-degree rape and by failing thereafter to give *any notice whatsoever*, prior to the jury being impaneled and jeopardy attaching, of an intent instead to pursue a conviction for first-degree rape arguably supported by the short-form indictment, the State made a binding election not to pursue the greater degree of the offense, and such election was tantamount to an acquittal of first-degree rape.

*Id.* at 494, 346 S.E.2d at 661 (emphasis in original).[14]

While the State correctly notes that this case presents a different circumstance from that detailed in *Jones*, it does not adequately explain why a prosecutor's

---

[13] The *Jones* Court did not reach the issue of whether or not the indictment, which contained a sufficient description of first-degree rape in the body of the indictment but also contained a caption and statutory citation that both referenced second-degree rape, would have been sufficient to charge first-degree rape absent the State's post-jeopardy election. 317 N.C. at 493, 346 S.E.2d at 660–61.

[14] In reaching our conclusion in *Jones* that the State had made a binding election to pursue only the charge of second-degree rape, we also noted that the State had "that charge [for second-degree rape] entered of record in the clerk's minutes of arraignment." *Id.* at 493, 346 S.E.2d at 660-61.

unilateral, post-attachment decision to terminate the entire prosecution should be *less* binding on the State than its post-attachment decision to pursue a lesser charge. By making the unilateral choice to enter a final dismissal of defendant's murder charge after jeopardy had attached, the State made a binding decision not to retry the case. Thus, we conclude that the State's post-attachment dismissal of defendant's indictment was tantamount to, or the functional equivalent of, an acquittal, which terminated the original jeopardy that had continued following the declaration of a hung jury mistrial in defendant's case.

## Conclusion

At his first trial, defendant was unquestionably placed in jeopardy, which continued after his first trial ended with a hung jury mistrial. As explained by the continuing jeopardy doctrine, the mistrial was not a terminating event that deprived the State of the opportunity to retry defendant. Rather, as defendant acknowledges, the State at that time could have tried defendant again on the existing charge without violating his double jeopardy rights. Instead of exercising that opportunity to retry defendant, the State entered a final dismissal of the charge, unilaterally and irrevocably terminating the prosecution and, with it, defendant's original jeopardy. Under the Double Jeopardy Clause, the State was then barred from retrying defendant for the same crime.[15]

---

[15] Of course there may have been crimes other than lesser included offenses of murder with which defendant could have been charged arising from the same incident. *See State v.*

Because defendant's jeopardy remained attached following the mistrial declaration in his first trial and was terminated when the State subsequently entered a dismissal of the charge under N.C.G.S. § 15A-931, we conclude that defendant's second prosecution was barred by the Double Jeopardy Clause and that the trial court erred in denying defendant's motion to dismiss his 2015 murder indictment on double jeopardy grounds. Thus, we affirm the Court of Appeals' decision vacating defendant's murder conviction.

AFFIRMED.

---

*Wilson*, 338 N.C. 244, 261, 449 S.E.2d 391, 401 (1994).

Justice NEWBY dissenting.

The general principles governing double jeopardy provide that when a trial ends in a mistrial the State can retry that defendant on the same charges. Procedurally, the subsequent new trial has all the same stages as the original one, including a pretrial stage. A dismissal during the pretrial stage does not prevent a subsequent re-indictment and retrial. The majority ignores these general principles and, by its holding, makes North Carolina an outlier in the country. Guided by a misapplication of the concept of continuing jeopardy, the majority effectively eliminates a complete, new trial after a mistrial (or reversal on appeal), removing any pretrial proceedings. Under its theory, once jeopardy attaches with the first trial, it continues, affecting everything that occurs thereafter. The majority's interpretation of continuing jeopardy means any motion or dismissal after a mistrial is treated as if made midtrial. Thus, after a mistrial, a pretrial dismissal is deemed an acquittal. Because of the majority's hyper-technical application of its view of the continuing jeopardy theory, defendant's murder conviction is vacated, and he goes free. The fundamental right against being tried twice for the same crime does not require this outcome.

The State's dismissal here does not address defendant's guilt or innocence and therefore is not the functional equivalent of a jury verdict of acquittal. Regardless of

which abstract legal theory of jeopardy informs this Court, it should not stray from the fundamental concepts governing mistrials and double jeopardy. The mistrial here returned the criminal proceedings to a pretrial status and allowed for a dismissal of the charge without prejudice. This approach is consistent with the long-established precedent of the Supreme Court of the United States and this Court that, after a mistrial, the trial process "proceed[s] anew," *United States v. Scott*, 437 U.S. 82, 92, 98 S. Ct. 2187, 2194, 57 L. Ed. 2d 65, 75 (1978), as if "there has been no trial," *State v. Tyson*, 138 N.C. 627, 629, 50 S.E. 456, 456 (1905). Thereafter, defendant was properly re-indicted and retried, resulting in the jury convicting defendant of murder; that conviction is now judicially erased. Allowing the State to take a pretrial dismissal after a mistrial and subsequently to retry defendant does not offend the safeguard against double jeopardy. I respectfully dissent.

## I. Facts and Procedural History

In 2009 the State charged defendant with the first-degree murder of James Deberry based in part on Deberry's dying statement after being shot. On 6 December 2010, defendant's trial began. Three days later, the trial court declared a mistrial after the jury was unable to reach a verdict. On 16 December 2010, the trial court issued a judgment form noting "<u>Mistrial</u> Con't to next Status Hearing for State to decide if case to be retried."

On 14 April 2011, the State dismissed the murder charge against defendant by filing the standard Form AOC-CR-307 in accordance with N.C.G.S. § 15A-931,

circling "Dismissal" in handwriting, rather than "Notice of Reinstatement," on the form. The form has no checkbox to indicate a mistrial, and the State selected the fourth checkbox option "Other: *(specify),*" and specified below "hung jury, State has elected not to re-try case." The State noted that, in the mistrial, "A jury has ~~not~~ been impaneled ~~nor~~ and has [sic] evidence been introduced." Notably, the State did not check any box on the form that could signify a finding of defendant's guilt or innocence despite having these checkbox options: "No crime is charged"; "insufficient evidence to warrant prosecution"; and defendant "agreed to plead guilty."

The State obtained more evidence linking defendant to Deberry's death and, on 6 July 2015, a grand jury issued a new indictment against defendant for first-degree murder. Before his second trial, defendant unsuccessfully moved to dismiss the new indictment on double jeopardy grounds. On 7 November 2018, the jury convicted defendant of second-degree murder.

On appeal defendant conceded, and the majority agrees, that the State could retry him on the mistried murder charge without transgressing double jeopardy protections. The Court of Appeals held, and now a majority of this Court holds, that the prosecutor's post-mistrial voluntary dismissal of the original murder indictment possessed "the same constitutional finality and conclusiveness as an acquittal." *State v. Courtney*, 817 S.E.2d 412, 414 (N.C. Ct. App. 2018). Thus, defendant's second trial put him in jeopardy twice for the same charge in violation of the principles of double jeopardy.

In affirming the Court of Appeals, the majority holds

> that when the State enters a voluntary dismissal under
> N.C.G.S. § 15A-931 after jeopardy has attached, jeopardy
> is terminated in the defendant's favor, regardless of the
> reason the State gives for entering the dismissal. The State
> cannot then retry the case without violating a defendant's
> right to be free from double jeopardy. When the State
> dismisses a charge under section 15A-931 after jeopardy
> has attached, jeopardy terminates.

In its view, once jeopardy attaches with the empaneling of the first jury, jeopardy infects each aspect of the proceeding thereafter, even after a mistrial. Thus, the majority "hold[s] that where, as here, the State dismisses a charge under section 15A-931 after jeopardy has attached, a defendant's right to be free from double jeopardy under the federal and state constitutions is violated if the State initiates a subsequent prosecution on the same charge." Of note, its analysis would also apply to cases reversed on appeal. The majority attempts to support this position by misapplying precedent from the Supreme Court of the United States and this Court.

The majority's hyper-technical application of the "continuing jeopardy" theory is flawed because it does not ask the correct fundamental question: After a mistrial, are the parties returned to the same position procedurally as before the original trial? If so, there is a procedural pretrial period during which the State can take a voluntary dismissal. At this stage, no jury is currently empaneled; various pretrial proceedings must occur. Precedent from the Supreme Court of the United States and this Court indicates that, after a mistrial, the proceeding returns to a pretrial status. Thus, a

4

dismissal following a mistrial and before a new jury is empaneled is a pretrial dismissal which is not akin to an acquittal.

The majority's approach confuses defendant with "an *acquitted* defendant [who] may not be retried" regardless of the reason for the acquittal. *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 829, 54 L. Ed. 2d 717, 726 (1978) (emphasis added). Defendant's first trial ended with a hung jury, resulting in a mistrial. A hung jury is not an acquittal, *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165, 165 (1824), nor is a pretrial dismissal an acquittal. Retrying defendant on a new indictment does not violate the prohibition against double jeopardy.

## II. Governing Principles of Double Jeopardy

The Fifth Amendment of the United States Constitution contains a guarantee that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V; *see also Benton v. Maryland*, 395 U.S. 784, 794–96, 89 S. Ct. 2056, 2062–63, 23 L. Ed. 2d 707, 716–17 (1969) (incorporating the Double Jeopardy Clause to the States by the Fourteenth Amendment and noting its "fundamental nature" rooted in the English common law and dating back to the Greeks and Romans); *State v. Brunson*, 327 N.C. 244, 247, 393 S.E.2d 860, 863 (1990) (recognizing the law of the land clause of the North Carolina Constitution as affording

the same protections as the Double Jeopardy Clause of the federal constitution).

"Our double jeopardy case law is complex, but at its core, the Clause means that those acquitted or convicted of a particular 'offence' cannot be tried a second time for the same 'offence.' " *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019) (quoting U.S. Const. amend. V); *see id.* at 1966–67 (discussing the "abstract principle" that double jeopardy allows two punishments for "[a] single act" under the political theory of dual sovereignty); *see also Green v. United States*, 355 U.S. 184, 186–87, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199, 204 (1957) (recognizing "former" or "double jeopardy" as "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense" (citing 4 William Blackstone, *Commentaries* \*335)).

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 187–88, 78 S. Ct. at 223, 2 L. Ed. 2d at 204. Further, double jeopardy principles work "to preserve the finality of judgments." *Crist v. Bretz*, 437 U.S. 28, 33, 98 S. Ct. 2156, 2159, 57 L. Ed. 2d 24, 30 (1978).

"[A] defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a

judge." *United States v. Jorn*, 400 U.S. 470, 479, 91 S. Ct. 547, 554, 27 L. Ed. 2d 543, 553 (1971). Thus, jeopardy generally attaches "when the jury is empaneled and sworn." *Crist*, 437 U.S. at 35, 98 S. Ct. at 2161, 57 L. Ed. 2d at 553. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass v. United States*, 420 U.S. 377, 391–92, 95 S. Ct. 1055, 1064, 43 L. Ed. 2d 265, 276 (1975). Thus, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106, 123 S. Ct. 732, 736, 154 L. Ed. 2d 588, 595 (2003).

Hence, an acquittal is final even if obtained erroneously. *See Green*, 355 U.S. at 188, 192, 78 S. Ct. at 223–24, 226, 2 L. Ed. 2d at 204, 207. Even so, "an 'acquittal' cannot be divorced from the procedural context"; it has "no significance . . . unless jeopardy has once attached and an accused has been subjected to the risk of conviction." *Serfass*, 420 U.S. at 392, 95 S. Ct. at 1065, 43 L. Ed. 2d at 276. An acquittal, by its very definition, requires some finding of innocence and "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 1355, 51 L. Ed. 2d 642, 651 (1977). Therefore, jeopardy will always terminate following a defendant's acquittal, regardless of whether the acquittal

7

originated from a jury or judge. *See Evans v. Michigan,* 568 U.S. 313, 328–29, 133 S. Ct. 1069, 1080–81, 185 L. Ed. 2d 124, 140 (2013).

Generally, a conviction or guilty plea likewise brings finality if it represents the final judgment "with respect to the guilt or innocence of the defendant." *Burks v. United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 2149, 57 L. Ed. 2d 1, 12 (1978). The State cannot retry a convicted defendant in pursuit of harsher punishment. *See Green*, 355 U.S. at 190–91, 78 S. Ct. at 225–226, 2 L. Ed. 2d at 205–06 (discussing when the State is precluded from retrying on a greater offense). For the same reason, double jeopardy principles operate to defeat prosecutorial efforts to dismiss a case midtrial in hope of procuring a more favorable jury. Once jeopardy attaches in a trial, if the jury is wrongfully discharged without defendant's consent, he cannot be tried again with a different jury on the same charges. *Id.* at 188, 78 S. Ct. at 224, 2 L. Ed. 2d at 204 ("This prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict."); *see also Gori v. United States*, 367 U.S. 364, 369, 81 S. Ct. 1523, 1526–27, 6 L. Ed. 2d 901, 905 (1961).

Nonetheless, the law provides certain exceptions to the strict application of the bare text of the Fifth Amendment. For example, the protection against double jeopardy "does not bar reprosecution of a defendant whose conviction is overturned on appeal." *Justices of Bos. Mun. Court v. Lydon*, 466 U.S. 294, 308, 104 S. Ct. 1805, 1813, 80 L. Ed. 2d 311, 324 (1984). Some cases discussing this principle rely on the

theory of "continuing jeopardy" to justify imposing a new trial following a defendant's successful appeal. *See, e.g.*, *id.* at 309, 312, 104 S. Ct. at 1814, 1815, 80 L. Ed. 2d at 325, 327 (opining that jeopardy stays on a single and continuous course throughout the judicial proceedings and thus a new trial offers more protection to the defendant because he has two opportunities to secure an acquittal); *Green*, 355 U.S. at 189–193, 78 S. Ct. at 224–27, 2 L. Ed. 2d at 205–08 (offering continuing jeopardy as one "rationalization" to justify a new trial following a successful appeal).

Similarly, "[w]hen a trial court declares a mistrial, it all but invariably contemplates that the prosecutor will be permitted to proceed anew notwithstanding the defendant's plea of double jeopardy." *Scott*, 437 U.S. at 92, 98 S. Ct. at 2194, 57 L. Ed. 2d at 75. To "proceed anew" after a properly declared mistrial means a fresh start with a complete, new trial, having all the procedural stages as the original one. Thus, whether after an appeal or a mistrial, double jeopardy protection is not implicated by a complete, new trial.

## III. Unique Nature of Mistrials

"[W]ithout exception, the courts [in this country] have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Arizona*, 434 U.S. at 509, 98 S. Ct. at 832, 54 L. Ed. 2d at 730.

> The double-jeopardy provision of the Fifth Amendment . . .
> does not mean that every time a defendant is put to trial

before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. *In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. . . .* It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial.

*Wade v. Hunter*, 336 U.S. 684, 688–89, 69 S. Ct. 834, 837, 93 L. Ed. 974, 978 (emphasis added), *reh'g denied*, 337 U.S. 921, 69 S. Ct. 1152, 93 L. Ed. 1730 (1949). Seemingly contrary to the general rules governing double jeopardy, the jeopardy from the first trial is not regarded to have attached, continued, or ended in a way that can preclude a second trial. *See id.* at 688–89, 69 S. Ct. at 837, 93 L. Ed. at 978. A mistried defendant's "valued right to have his trial completed by a particular tribunal must . . . be subordinated to the public's interest in fair trials designed to end in just judgments." *Id.* at 689, 69 S. Ct. at 837, 93 L. Ed. at 978. Defendant is entitled to a fair trial, and the State is entitled to a fair opportunity to prosecute the crime; both defendant and the State are entitled to a jury verdict on the charges. *See Arizona*, 434 U.S. at 509, 98 S. Ct. at 832, 54 L. Ed. 2d at 730.

The Supreme Court of the United States first set out the general rule regarding mistrials in *United States v. Perez* by considering "whether the discharge of the jury by the Court from giving any verdict upon the indictment, with which they were

charged, without the consent of the prisoner, is a bar to any future trial for the same offence." *Perez*, 22 U.S. at 579, 6 L. Ed. at 578. The Court concluded that "the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.* at 580, 6 L. Ed. at 578 (contemplating the sound discretion by the trial court in declaring a mistrial). Under circumstances of manifest necessity, "a discharge [of the jury] constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial." *Id.* at 580, 6 L. Ed. at 579–80.

In *United States v. Sanford*, the Court confirmed that "[t]he Government's right to retry the defendant, after a mistrial, in the face of his claim of double jeopardy is generally governed by the test laid down in *Perez* . . . ." 429 U.S. 14, 16, 97 S. Ct. 20, 21, 50 L. Ed. 2d 17, 20 (1976) (footnote omitted). In that case the respondents successfully moved to dismiss the indictment post-mistrial but before the new trial had begun. *Id.* at 14–15, 97 S. Ct. at 20–21, 50 L. Ed. 2d at 19. On appeal the Court agreed "that jeopardy attached at the time of the empaneling of the jury for the first trial," but disagreed that the procedural "sequence of events in the District Court" presented a bar from retrying respondents under the Double Jeopardy Clause. *Id.* at 15, 97 S. Ct. at 21, 50 L. Ed. 2d at 19.

The Court determined that "the indictment terminated, not in [respondent's] favor, but in a mistrial declared, *sua sponte*, by the District Court." *Id.* at 15, 97 S. Ct. at 21, 50 L. Ed. 2d at 19. "Where the trial is terminated in this manner," *Perez* provides "the classical test for determining whether the defendants may be retried without violating the Double Jeopardy Clause." *Id.* at 15, 97 S. Ct. at 21, 50 L. Ed. 2d at 19–20. Reviewing respondent's post-mistrial motion to dismiss, the Court concluded: "The situation of a hung jury presented here is precisely the situation that was presented in *Perez*, and therefore the Double Jeopardy Clause does not bar retrial of these respondents on the indictment which had been returned against them." *Id.* at 16, 97 S. Ct. at 21, 50 L. Ed. 2d at 20 (citation omitted).

The Court compared the procedural posture of *Sanford* to its then-recent case *Serfass v. United States*. *Sanford*, 429 U.S. at 16, 97 S. Ct. at 21–22, 50 L. Ed. 2d at 20. *Serfass* involved a *pretrial* motion to dismiss an indictment *outside* the context of a mistrial; thus, the Court indicated the procedure after a mistrial was to begin afresh, including a pretrial period. *Serfass,* 420 U.S. at 379–81, 387–93, 95 S. Ct. at 1058–59, 1062–65, 43 L. Ed. 2d at 268–70, 273–77. In *Serfass* the Court held that a pretrial order dismissing an indictment did not affect the government's right to reprosecute the petitioner because there was no determination of guilt or innocence by the fact-finder. *Id.* at 389, 95 S. Ct. at 1063, 43 L. Ed. 2d at 274. Because the motion was pretrial, "[a]t no time during or following the hearing on petitioner's motion to dismiss the indictment did the District Court have jurisdiction to do more than grant

or deny that motion, and neither before nor after the ruling did jeopardy attach." *Id.* at 389, 95 S. Ct. at 1063, 43 L. Ed. 2d at 275. The Court also rejected the petitioner's assertion that dismissing the indictment, even if the trial court based its decision on facts that would constitute a defense at trial, was the functional equivalent of an acquittal. *Id.* at 390, 95 S. Ct. at 1063–64, 43 L. Ed. 2d at 275.

By analogizing the *post-mistrial* motion to dismiss an indictment in *Sanford* to the *pretrial* motion to dismiss the indictment in *Serfass*, the Court signifies the procedural similarities between those cases; both involved a dismissal during a pretrial stage. Retrial does not offend the protections afforded by the Double Jeopardy Clause. Thus, applying *Sanford* and *Serfass*, if a mistrial terminates the criminal proceeding, intervening motions between mistrial and the beginning of a defendant's second trial do not trigger double jeopardy protections. This principle is illustrated by this Court's long-stated view that "[w]hen a mistrial has been declared properly, 'in legal contemplation there has been no trial.' " *State v. Sanders*, 347 N.C. 587, 599, 496 S.E.2d 568, 576 (1998) (quoting *Tyson*, 138 N.C. at 629, 50 S.E. at 456).[1]

---

[1] Federal circuit courts have reached the same conclusion. *See, e.g.*, *Chatfield v. Ricketts*, 673 F.2d 330, 332 (10th Cir.) ("The *Sanford* court obviously concluded that since the government has a right to retry the defendant following a mistrial because of a hung jury, the period following the mistrial is a pretrial period. During the pretrial period, a prosecutor may dismiss charges, and the Double Jeopardy Clause does not prohibit the prosecutor from reasserting the same charges at a later date."), *cert. denied*, 459 U.S. 843, 103 S. Ct. 96, 74 L. Ed. 2d 88 (1982); *Arnold v. McCarthy*, 566 F.2d 1377, 1388 (9th Cir. 1978) ("Once a mistrial had been fairly ordered the situation became analogous to the pretrial period in which the prosecutor has undisputed authority to dismiss charges without fear of being prohibited from reasserting them by the Fifth Amendment. Subsequent to the declaration of a mistrial for reasons which satisfy the 'manifest necessity' standards of the Double Jeopardy Clause, the

state can dismiss criminal charges without forfeiting the right to retry them."); *Dortch v. United States*, 203 F.2d 709, 710 (6th Cir.) (per curiam) (The sequence of a mistrial, "a *nolle prosequi*[,] and a dismissal without prejudice do[es] not bar a second prosecution for the same offense, inasmuch as such terminations are not tantamount to acquittal."), *cert. denied*, 346 U.S. 814, 74 S. Ct. 25, 98 L. Ed. 342 (1953); *Lynch v. United States*, 189 F.2d 476, 478–79 (5th Cir.) ("When the mistrial was declared, the Government was at liberty to try the appellants again on the same indictment or to obtain a new indictment. A mistrial in a case is no bar to a subsequent trial of defendants."), *cert. denied*, 342 U.S. 831, 72 S. Ct. 50, 96 L. Ed. 629 (1951).

State courts have reached the same conclusion. *See, e.g.*, *Duncan v. State*, 939 So. 2d 772, 774–77 (Miss. 2006) (allowing re-indictment following mistrial due to hung jury on original indictment and the prosecutor's nolle prosequi of original indictment despite double jeopardy claim); *Casillas v. State*, 267 Ga. 541, 542, 480 S.E.2d 571, 572 (1997) ("[A] properly granted mistrial removes the case from the jury and a nolle prosequi entered thereafter, even without the consent of the defendant, does not have the effect of an acquittal. Since the nolle prosequi of the original indictment of Casillas was entered only after the mistrial was declared, he was not acquitted of any crimes charged in that original indictment and there is no bar to his retrial for the crimes charged in the new indictment." (citations omitted)); *State v. Gaskins*, 263 S.C. 343, 347, 210 S.E.2d 590, 592 (1974) ("If, after a mistrial has been duly ordered, the prosecuting officer enters a *nolle prosequi*, such will not be a bar to a subsequent prosecution for the same offense. . . . [as it] would not adjudicate either the innocence or the guilt of the respondent and would be no bar to his future prosecution for the same offense."(citations omitted)); *id.* (recognizing the differing effects of a pretrial dismissal following a mistrial and a midtrial dismissal that may occur during the second trial); *In re Weir*, 342 Mich. 96, 99, 69 N.W.2d 206, 208 (1955) ("The dismissal of the former prosecution . . . following disagreement of the jury is not to be considered as an acquittal either on the facts or on the merits." (citing, *inter alia*, *People v. Pline*, 61 Mich. 247, 28 N.W. 83 (1886))); *Smith v. State*, 135 Fla. 835, 839, 186 So. 203, 205 (1939) ("It is well settled in this state that a mistrial by reason of the inability of the jury to agree does not constitute former jeopardy. Nor is the entry of a *nolle prosequi* a bar to another information for the same offense. After the mistrial the case stood as if it had never been tried, and a *nolle prosequi* entered then had no different effect in favor of the defendant than if it had been entered prior to the trial." (citations omitted)); *Pline*, 61 Mich. at 251, 28 N.W. at 84 (concluding that the sequence of a mistrial, a subsequent nolle prosequi, followed by a new trial does not offend the defendant's right against double jeopardy).

Courts have applied the same principle following a reversal on appeal. *See, e.g.*, *C.K. v. State*, 145 Ohio St. 3d 322, 325, 49 N.E.3d 1218, 1221–22 (2015) ("[T]he dismissal of an indictment without prejudice on remand from a reversal does not bar future prosecution of the accused."); *United States v. Davis*, 873 F.2d 900, 903 (6th Cir.) ("In the leading case of *United States v. Ball*, 163 U.S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896), the Supreme Court held that a defendant who succeeded in having his murder conviction set aside because of a

Like the trial court in *Sanford*, the majority here confuses the theory of jeopardy with the procedural "sequence of events." *See Sanford*, 429 U.S. at 15, 97 S. Ct. at 21, 50 L. Ed. 2d at 19. The procedural posture of *Sanford* determined the effect of the dismissal. Because the case after mistrial was in its pretrial stage, the dismissal was not a terminating event.

The majority seeks to minimize the holding of *Sanford*, saying that *Richardson v. United States*, 468 U.S. 317, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984), somehow limits *Sanford* and, without analysis, that a motion to dismiss by a defendant is qualitatively different than a dismissal by the State. Under its misapplication of the "continuing jeopardy" theory, however, jeopardy would infect all aspects of the proceeding. Regardless of which party makes the motion, the granting of a motion to dismiss after jeopardy attached in the first trial would be a terminating event. The correct question asks at what trial stage was the motion made or the dismissal was taken, not the identity of the party that initiated it.

## IV. Continuing Jeopardy

While the majority's misapplication of the "continuing jeopardy theory" causes it to miss the fundamental question regarding the procedural posture of this case, a discussion of the development of the theory is helpful. Similar to

---

legal defect in the indictment was not 'twice put in jeopardy,' in violation of the Constitution, when retried on a new and legally sufficient indictment."), *cert. denied*, 493 U.S. 923, 110 S. Ct. 292, 107 L. Ed. 2d 271 (1989).

granting a new trial after appeal, courts have put forward different legal theories that justify a second trial following a mistrial, but the theories result in the same conclusion: The State may proceed with a complete, new trial following a mistrial.

The majority relies heavily on *Richardson* to justify its outcome here. In that case the jury acquitted Richardson of some but not all federal narcotics charges brought against him, resulting in a hung jury on those remaining charges and a declared mistrial. *Richardson*, 468 U.S. at 318–19, 104 S. Ct. at 3082–83, 82 L. Ed. 2d at 246–47. The trial court scheduled defendant's new trial. *Id.* at 318, 104 S. Ct. at 3082, 82 L. Ed. 2d at 246. Richardson moved to bar the retrial, arguing that "if the Government failed to introduce sufficient evidence to establish his guilt beyond a reasonable doubt at his first trial [on the acquitted charges], he may not be tried again following a declaration of a mistrial because of a hung jury." *Id.* at 322–23, 104 S. Ct. at 3084, 82 L. Ed. 2d at 249.

The Court in *Richardson* recognized that "[t]he case law dealing with the application of the prohibition against placing a defendant twice in jeopardy following a mistrial because of a hung jury has its own sources and logic." *Id.* at 323, 104 S. Ct. at 3085, 82 L. Ed. 2d at 249–50. Citing "this settled line of cases," it reaffirmed that "a failure of the jury to agree on a verdict was an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise be defeated.' " *Id.* at 323–24, 104 S. Ct. at 3085, 82 L. Ed. 2d at 250 (quoting *Perez*, 22 U.S. at 580, 6 L. Ed. at 165).

16

The Court emphasized Richardson's situation involved a mistrial and distinguished it from the outcome of *Burks v. United States*, a nonmistrial case. *Id.* at 325–26, 104 S. Ct. at 3086, 82 L. Ed. 2d at 250–51 (citing *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)). The Court introduced this discussion by refusing "to uproot this settled line of cases by extending the reasoning of *Burks*, which arose out of an appellate finding of insufficiency of evidence to convict following a jury verdict of guilty, to a situation where the jury is unable to agree on a verdict." *Id.* at 324, 104 S. Ct. at 3085, 82 L. Ed. 2d at 250. The Court then summarized its holding in *Burks* as equating "an appellate court's finding of insufficient evidence to convict on appeal from a judgment of conviction" as an acquittal "for double jeopardy purposes." *Id.* at 325, 104 S. Ct. at 3086, 82 L. Ed. 2d at 251. *Burks* "obviously did not establish, consistently with cases such as *Perez*, that a hung jury is the equivalent of an acquittal." *Id.* at 325, 104 S. Ct. at 3086, 82 L. Ed. 2d at 251.

In distinguishing Richardson's situation from that of a defendant in a nonmistrial case, the Court recognized that mistrials present unique exceptions that terminate a criminal proceeding in a way that permits retrial without giving rise to a double jeopardy claim. *See id.* at 325, 104 S. Ct. at 3086, 82 L. Ed. 2d at 251 ("[T]he failure of the jury to reach a verdict is not an event which terminates jeopardy."). The concurring opinion in *Richardson* calls this "continuing jeopardy" theory "a formalistic concept" unnecessary to justifying the general policy behind retrying mistrials. *Id.* at 327, 329, 104 S. Ct. at 3087, 3088, 82 L. Ed. 2d at 252, 254 (Brennan,

J., concurring in part and dissenting in part) ("[S]trong policy reasons may justify subjecting a defendant to two trials in certain circumstances notwithstanding the literal language of the Double Jeopardy Clause" and without "seek[ing] to justify such a retrial by pretending that it was not really a new trial at all but was instead simply a 'continuation' of the original proceeding." (quoting *Lydon*, 466 U.S. at 321, 104 S. Ct. at 1820, 80 L. Ed. 2d at 333 (Brennan, J., concurring in part and concurring in judgment))).

As demonstrated by *Richardson*, mistrials presuppose a future prosecution. *See id.* at 326, 104 S. Ct. at 3086, 82 L. Ed. 2d at 251 (majority opinion) ("The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree."). Tellingly, in *Richardson* both the majority opinion's theory and the concurring opinion's theory result in the same general rule that the State may retry a defendant following a mistrial.

The Supreme Court of the United States "ha[s] constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause." *Id.* at 323–24, 104 S. Ct. at 3085, 82 L. Ed. 2d at 250 (A hung jury "permit[s] a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise be defeated.' " (quoting *Perez*, 22 U.S. at 580, 6 L. Ed. at 165)). Here the majority now uses *Richardson*'s "continuing jeopardy" justification that *allows* a new trial following a mistrial to *prevent* a new trial, by holding that the

18

prosecutor's pretrial dismissal was a "terminating event" to the jeopardy that had attached at the original trial. Regardless of the legal theory posited to *justify* a new trial following a mistrial, that same theory cannot then be used to *prohibit* the same.

In a case with facts similar to the instant case, the Supreme Court of Mississippi applied the general principles of double jeopardy under the continuing jeopardy theory in the context of two previous mistrials for the same defendant. *Beckwith v. State*, 615 So. 2d 1134, 1135–36 (Miss. 1992), *cert. denied*, 510 U.S. 884, 114 S. Ct. 232, 126 L. Ed. 2d 187 (1993). Beckwith was indicted and tried twice for the murder of civil rights activist Medgar Evers, resulting in hung juries and mistrials. *Id.* at 1135. In 1969, five years after his second mistrial, the prosecutor entered a *nolle prosequi*, noticing his intent not to prosecute further. *Id.* In 1990, twenty-six years after the last mistrial, the State again indicted Beckwith for murder. *Id.* On interlocutory appeal, Beckwith claimed another trial would violate his constitutional right against double jeopardy. *Id.* at 1136.

Applying federal precedent and Mississippi law, that court first recognized that "[d]efendants may be repeatedly retried . . . following mistrials granted because the jury was deadlocked and could not reach a unanimous verdict." *Id.* at 1147. The court further determined the *nolle prosequi* was akin to " 'retiring' or 'passing' an indictment to the files [and] [wa]s not an acquittal barring further prosecution, following which the case may be reopened upon motion of the State"; it "did not terminate the original jeopardy, and the State was not barred thereafter from seeking

19

the re-indictment of and re-prosecuting the defendant from the same offense." *Id.* The court continued, "If, following a mistrial declared in such an instance, the State does what it considers manifestly fair, and moves to dismiss the case, it would be shockingly wrong to hold that it could never have the case re-opened upon discovery of additional evidence." *Id.* at 1148. Therefore, "the entry of the *nolle prosequi* in 1969 did not terminate Beckwith's original jeopardy or accrue unto him the right not to be re-indicted and re-prosecuted for the same offense." *Id.*

V. Effect of the Voluntary Dismissal

A voluntary dismissal during a pretrial phase following a mistrial is not the equivalent of an acquittal and cannot prevent a retrial. A prosecutor may take "a simple and final dismissal which terminates the criminal proceedings under that indictment" at any time. *State v. Lamb*, 321 N.C. 633, 641, 365 S.E.2d 600, 604 (1988) (citing N.C.G.S. § 15A-931 (1983)). A dismissal at a pretrial stage does not prevent re-indictment and retrial. Of note, there is no statute of limitations applicable to murder in North Carolina, nor does dismissal and re-indictment implicate speedy trial concerns. *See State v. Johnson*, 275 N.C. 264, 271, 167 S.E.2d 274, 279 (1969).

The standard dismissal form used by the prosecutor here does not contemplate proceedings after a mistrial (or reversal on appeal). The form lists the sections of the General Statutes to which it corresponds, including, at issue here, section 15A-931

governing general dismissals,[2] which provides in pertinent part:

> (a) . . . [T]he prosecutor may dismiss any charges stated in a criminal pleading including those deferred for prosecution by entering an oral dismissal in open court before or during the trial, or by filing a written dismissal with the clerk at any time. The clerk must record the dismissal entered by the prosecutor and note in the case file whether a jury has been impaneled or evidence has been introduced.
>
> (a1) Unless the defendant or the defendant's attorney has been notified otherwise by the prosecutor, a written dismissal of the charges against the defendant filed by the prosecutor shall be served in the same manner prescribed for motions under G.S. 15A-951. In addition, the written dismissal shall also be served on the chief officer of the custodial facility when the record reflects that the defendant is in custody.

N.C.G.S. § 15A-931(a) to (a1) (2017). A dismissal under N.C.G.S. § 15A-931 terminates the criminal proceedings under that indictment. *Id.* § 15A-931 official cmt. (2017). It does not prohibit indicting the same defendant later on the same charges, *see id.*, but a new indictment is necessary to do so, *see Lamb*, 321 N.C. at

---

[2] The form includes additional statute cites. *See* N.C.G.S. § 15A-302(e) (2017) ("Dismissal by Prosecutor. — If the prosecutor finds that no crime or infraction is charged in the citation, or that there is insufficient evidence to warrant prosecution, he may dismiss the charge and so notify the person cited. An appropriate entry must be made in the records of the clerk. It is not necessary to enter the dismissal in open court or to obtain consent of the judge."); N.C.G.S. § 15A-932(b) (2017) (captioned "Dismissal with leave when defendant fails to appear and cannot be readily found or pursuant to a deferred prosecution agreement" that "results in removal of the case from the docket of the court, but all process outstanding retains its validity . . .").

A dismissal under sections 15A-931 and 15A-932 "results in termination or indeterminate suspension of the prosecution of a criminal charge." N.C.G.S. § 15A-1381(6) (2017).

635, 641, 365 S.E.2d at 601, 604 (reviewing a pretrial dismissal for an apparent lack of evidence under N.C.G.S. § 15A-931 that did not preclude later re-indictment on the same charges). In contrast, "[s]ection 15A-932 provides for a dismissal 'with leave' " that removes "the case from the court's docket, but the criminal proceeding under the indictment is *not* terminated. All outstanding process retains its validity and the prosecutor may reinstitute the proceedings by filing written notice with the clerk without the necessity of a new indictment." *Id.* at 641, 365 S.E.2d at 604 (citing N.C.G.S. § 15A-932 (1983)). A proper dismissal under N.C.G.S. § 15A-931 prevents a claim of a speedy trial violation, *id.*, whereas an indefinite continuance may give rise to one.

The dismissal statutes were enacted in response to an opinion issued by the Supreme Court of United States, *Klopfer v. North Carolina*, to provide "a simple and final dismissal." *See* N.C.G.S. § 15A-931 official cmt. (citing *Klopfer v. North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967)). In that case the Supreme Court of the United States invalidated a North Carolina procedure, referred to as the "*nolle prosequi* with leave," because it violated Klopfer's right to a speedy trial. *Klopfer*, 386 U.S. at 222, 87 S. Ct. at 993, 18 L. Ed. 2d at 7. Klopfer was indicted for misdemeanor criminal trespassing in January 1964, and his trial ended in a mistrial in March 1964. *Id.* at 217, 87 S. Ct. at 990, 18 L. Ed. 2d at 4–5. The trial court initially continued the case for another term in April 1965 before the State took a "*nolle prosequi* with leave"

eighteen months after the indictment. *Id.* at 217–18, 87 S. Ct. at 990–91, 18 L. Ed. 2d at 5.

In effect the *nolle prosequi* with leave allowed the indictment to remain pending for an indeterminate time period, indefinitely postponing prosecution while at the same allowing the case to be docketed on the court's calendar at any time. *Id.* at 214, 87 S. Ct. at 984, 18 L. Ed. 2d at 3. In the meantime, Klopfer could not obtain a dismissal of the charge or demand the case be set for trial. *Id.* at 216, 87 S. Ct. at 990, 18 L. Ed. 2d at 4. The Court concluded:

> The pendency of the indictment may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the "anxiety and concern accompanying public accusation," the criminal procedure condoned in this case by the Supreme Court of North Carolina clearly denies the petitioner the right to a speedy trial which we hold is guaranteed to him by the Sixth Amendment of the Constitution of the United States.

*Id.* at 222, 87 S. Ct. at 993, 18 L. Ed. 2d at 7 (footnote omitted) (quoting *United States v. Ewell*, 383 U.S. 116, 120, 86 S. Ct. 773, 776, 15 L. Ed. 2d 627, 630 (1966)). Notably, Klopfer's victory meant he "was entitled to be tried in accordance with the protection of the confrontation guarantee of the Sixth Amendment" following his mistrial, rather than a substantive dismissal of the charges. *Id.* at 222, 87 S. Ct. at 993, 18 L. Ed. 2d at 7–8 (quoting *Pointer v. Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069, 13 L. Ed. 2d 923, 928 (1965)).

Nonetheless, the majority declares that the section 15A-931 dismissal here provides a newfound "terminating event" that now bars retrial following a mistrial. Under the majority's reasoning, because jeopardy attached in defendant's original mistrial, the State's dismissal following the mistrial occurred during "jeopardy" and thus is treated as a midtrial dismissal. The majority overlooks the mistrial principle that the "jeopardy" of the mistrial does not preclude a retrial. The initial jury was discharged, and a new trial must take place to put defendant at risk of conviction. Before the new trial began, during the new pretrial phase, the State could dismiss the pending indictment without being prohibited from re-indicting and retrying defendant.

The statute clearly governs voluntary dismissals at trials generally and does not, on its face, even address the unique circumstances involved in a mistrial. Moreover, the form associated with the statute does not specifically include nor contemplate the procedure following a mistrial. The State signified defendant's first trial terminated with a hung jury by handwriting and without suggesting any substantive or conclusive finding on defendant's guilt or innocence. The dismissal here is not substantive; it does not speak to defendant's guilt or innocence and cannot be equated to an acquittal.

By the statute's text and application, it is unlikely that the General Assembly intended it to place North Carolina outside the longstanding double jeopardy principles that govern mistrials. It is more likely that the General Assembly intended

to abolish a specific procedure that threatened a defendant's right to a speedy trial when an indictment remained pending against him and to prevent prosecutorial efforts to dismiss a case midtrial in hope of procuring a more favorable jury. Double jeopardy concerns that may arise in a midtrial dismissal simply do not arise in the pretrial stages. Even under a continuing jeopardy theory of mistrials, a nonsubstantive voluntary dismissal by the State does not preclude a retrial following a mistrial. *See Beckwith*, 615 So. 2d at 1148. A prosecutor can dismiss an indictment following a mistrial under N.C.G.S. § 15A-931, in keeping with defendant's constitutional right to a speedy trial, without compromising the State's undeniable right to retry a mistried case should new evidence surface.

It is indisputable that the State can enter a pretrial section 15A-931 dismissal and later re-indict. The majority places the State in the impossible position of choosing to proceed to a new trial with what one jury deemed insufficient evidence or lose any opportunity to hold the defendant accountable for the crime. Instead of rushing to a retrial, the ends of justice may be best served by waiting. Over time, as with this case, new witnesses may come forward or improvements may be made in forensic evidence testing. The new evidence might exonerate the defendant or implicate him. A pretrial dismissal, whether during the initial stage or during the pretrial stage after mistrial, can serve the ends of justice. Thereafter, as with this defendant and with Beckwith, armed with new evidence the State can retry the defendant even years later.

25

*Newby, J., dissenting*

The majority's reliance on the State's election rule, as described in *State v. Jones*, underscores the majority's mistaken view of the procedural posture of this case. 317 N.C. 487, 346 S.E.2d 657 (1986). In that case the trial proceeded on a charge of second-degree rape; however, at the close of evidence, the State proposed a jury instruction on first-degree rape, and the trial court gave that instruction. *Id.* at 491, 346 S.E.2d at 659–60. The jury ultimately convicted the defendant on first-degree rape. *Id.* In reversing the first-degree rape conviction, this Court "h[e]ld that the State made a binding election," after the jury was empaneled, "not to pursue a verdict of guilty of first-degree rape, thereby effectively assenting to an acquittal of the maximum offense arguably charged by the indictment." *Id.* at 493, 346 S.E.2d at 660. The majority says the State cannot adequately explain why

> a prosecutor's unilateral, post-attachment decision to terminate the entire prosecution should be *less* binding on the State than its post-attachment decision to pursue a lesser charge. By making the unilateral choice to enter a final dismissal of defendant's murder charge after jeopardy had attached, the State made a binding decision not to retry the case.

Clearly, the majority confuses the trial stages at which the actions were taken; the charge election occurred during trial whereas the post-mistrial dismissal here was taken during the pretrial stage.

## VI. Conclusion

Does a mistrial result in a new proceeding with a pretrial period? The clear language from this Court says that, following a mistrial, "the jury has been

discharged . . . [and] in legal contemplation there has been no trial." *Tyson*, 138 N.C. at 629, 50 S.E. at 456. Likewise, the Supreme Court of the United States says the proceeding begins anew after a mistrial. *See Scott*, 437 U.S. at 92, 98 S. Ct. at 2194, 57 L. Ed. 2d at 75. Thus, the dismissal here was a pretrial dismissal, which is not an acquittal, and the State is not barred from proceeding with a new indictment and trial. The majority's hyper-technical misapplication of the "continuing jeopardy" theory is not supported by applicable law and results in a convicted murderer being freed. I respectfully dissent.

Justice ERVIN joins in this dissenting opinion.