IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-636

Filed: 21 April 2020

Guilford County, Nos. 19CRS025048, 17CRS086101

STATE OF NORTH CAROLINA

v.

KENNETH CHRISTOPHER STALLINGS, Defendant.

Appeal by Defendant from judgment entered 10 January 2019 by Judge William A. Wood, II, in Guilford County Superior Court. Heard in the Court of Appeals 18 February 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Benjamin T. Spangler, for the State.*

*Daniel J. Dolan, for Defendant-Appellant.*

INMAN, Judge.

Defendant Kenneth Christopher Stallings ("Defendant") appeals from a judgment entered following a jury verdict finding him guilty of possession with intent to sell or deliver marijuana, possession of marijuana drug paraphernalia, and trafficking in methamphetamine. On appeal, Defendant contends that the trial court: (1) lacked subject matter jurisdiction to try him on the charge of trafficking in methamphetamine because the relevant charging document—an information superseding an earlier indictment—was not filed prior to trial; and (2) committed

plain error in failing to give a jury instruction on guilty knowledge *sua sponte*. After careful review, we hold that Defendant has failed to demonstrate reversible error.

## I. FACTUAL AND PROCEDURAL HISTORY

The evidence at trial tends to show the following:

On the afternoon of 19 September 2017, Officer Senaria Smith of the Greensboro Police Department responded to a call from a security company about a possible break-in at a house on Gatewood Avenue. When she arrived at the home, she heard a noise from inside and noticed that the side door had been forced open. Concerned that a person could still be in the home, Officer Smith drew her sidearm and called for backup.

Additional officers arrived a short time later and conducted a protective sweep of the house. In the course of the sweep, Officer Smith observed a scale and narcotics on the kitchen counter, a plastic bag with a crystalline substance on the floor, and a hole in the laundry room wall with plastic baggies inside.

Defendant arrived at the house as police were leaving. Officer Smith asked him if he lived there. Defendant replied that he did and stated that he had a roommate named "Michael—uh—Smith."

Police informed Defendant that officers had found evidence of narcotics in plain view during their protective sweep. Defendant responded by asking, "More than

weed?" When the officers described the additional narcotics, Defendant said, "I don't know about all that." He then told police that he was trying to call Michael Smith.

Defendant cooperated with police and signed a form consenting to a search of the home. In the bedroom Defendant identified as his roommate's, Officer Smith found a stack of paperwork bearing only Defendant's name. A Greensboro drug and vice detective, Harvey Harris, arrived a short time later to assist Officer Smith. Detective Harris observed two substances—one crystalline and the other consistent with marijuana—on the scale on the kitchen counter. Next to the scale, Detective Harris saw a bag containing a crystalline substance inside a pill bottle bearing Defendant's name. He also observed plastic bags, including a bag of marijuana, nearby, as well as a marijuana cigarette in the ashtray of the living room. Searches by other officers turned up another bag of marijuana in a bedroom. Detective Harris also located the plastic bag that Officer Smith had seen on the floor of the laundry room and noticed it contained a crystalline substance.

Detective Harris asked Defendant who lived there. Defendant confirmed that his name was on the lease and utility bills. Detective Harris further questioned Defendant about the crystalline substances which appeared to be methamphetamine, and Defendant said he and Michael Smith both stayed there. Detective Harris asked Defendant for a picture of Michael Smith, which he was unable to provide. Defendant stated that Michael Smith's phone had been cut off, and that he did not know any of

his roommate's friends or relatives. He denied dealing in methamphetamines or any illegal narcotics but admitted to smoking marijuana.

Asked to identify items in the house belonging to his roommate, Defendant was unable to specifically identify anything other than a green toothbrush with a travel cap located in the bathroom. The officers concluded their search of the house after recovering the following items: (1) the plastic bag from the laundry room floor, which contained methamphetamine; (2) the clear plastic bags in a cut out area of the laundry room wall; (3) the digital scale with marijuana and a crystalline substance; (4) the pill bottle with Defendant's name on it and a bag of methamphetamine inside; (5) the bag of marijuana and a box of plastic bags on the kitchen counter; (6) the marijuana roach in the living room; (7) a bag of marijuana from one of the bedrooms; (8) $1,247 in cash in a bedroom closet; (9) the paperwork with Defendant's name on it; (10) Defendant's phone; (11) an additional iPhone from one of the bedrooms; and (12) a tablet computer that Defendant claimed as his. Defendant was taken into custody following the search, and Officer Smith and Detective Harris both recorded the above events with body cameras.

Following Defendant's arrest, police searched Defendant's phone and discovered text messages that indicated Defendant sold marijuana. Lab reports later confirmed that the substance found in the plastic bag in the laundry room was methamphetamine. Officers continued to monitor Defendant's home for two weeks

following the break-in in an attempt to locate and identify Michael Smith; those efforts ultimately proved unsuccessful, and no person named "Michael Smith" was ever located.

A Guilford County grand jury returned two indictments on 19 February 2018. The first indictment, filed in file number 17 CRS 86100, charged Defendant with one count each of trafficking in MDMA and maintaining a dwelling for keeping and selling MDMA; the second indictment, filed in file number 17 CRS 86101, charged him with one count of possession with intent to sell marijuana and one count of possession of marijuana paraphernalia. Both cases came on for trial on 7 January 2019 and were consolidated at the outset of proceedings.

The trial court called in prospective jurors and questioned them about any undue hardships warranting deferral of jury service. It next informed the venire of the charges brought against Defendant, the date of the alleged offenses, and Defendant's plea of not guilty. The trial court sat twelve potential jurors in the jury box and asked if they had any connection with the judge, the attorneys, Defendant, and any potential witnesses. It then turned the *voir dire* questioning over to the State, but the prosecutor instead requested a bench conference. The trial court excused the venire, at which point the prosecutor pointed out that the allegations in the indictment in file number 17 CRS 86100 concerned MDMA rather than the methamphetamine ultimately shown on the lab reports:

[THE STATE]: [T]he substance in the lab report is methamphetamine. It is not 3, 4-MDMA, which is what was identified.

. . . .

Now, at this point, we have two choices: I can dismiss that charge, because we have not impaneled a jury, and I can reindict and [have] Mr. Stallings go through the arrest process again, or I — or we can do it on a bill of information. However, Your Honor knows and his attorney knows, that's totally up to Mr. Stallings at this point.

. . . .

[DEFENDANT'S COUNSEL]: Like [the prosecutor] . . . I have been prepping this thing about a month, and I read that twice as well, several times. And it is what it is. I would like an opportunity just to step back in the conference room and talk to my client with regard to the options in the case. I think the options that [the prosecutor] stated in open court are accurate.

THE COURT: [Defendant's counsel], you take all the time you need.

Over an hour later, the parties returned to the courtroom and proceedings resumed. Defendant's counsel informed the Court that, after discussing their options and "the risks and benefits of both the bill of information and a delay," Defendant agreed to proceed by information charging him with trafficking methamphetamine and had signed a waiver of indictment and statutory notice normally required for the new charge. The trial court pointed out that it had previously denied Defendant's pre-trial motion for a continuance and recusal and noted that Defendant would

essentially receive that relief if he decided against waiving reindictment. Defendant's counsel confirmed on the record that his client nonetheless wished to proceed on the information. Consistent with that understanding, the prosecutor read into the record the allegations in the new bill of information—charging Defendant with only one count of trafficking methamphetamine—and informed the court that "at the same time, I'll be filing a dismissal in the MDMA [indictment]."

With the new information in hand, the trial court called the prospective jurors back into the room and informed them of the new charge. Following jury selection, the jury was empaneled, and the trial proceeded in ordinary fashion. Officer Smith and Detective Harris both testified to their experiences with Defendant on the day of the break-in, and the footage from their body cameras was submitted into evidence during the State's presentation. Defendant did not testify in his defense, but he did call a man named Tyrone Brown as a witness. Mr. Brown testified that he: (1) was the roommate that lived in the house with Defendant; (2) had brought the methamphetamine into the house without Defendant's knowledge; and (3) hid the methamphetamine in the laundry room and pill bottle. When asked what room he stayed in, Mr. Brown testified "all of them[,]" and testified that he kept clothes in closets in both rooms.

After the close of evidence and during the jury charge, the trial court gave the standard instruction on narcotics trafficking, which did not include any specific

instruction on guilty knowledge. The jury ultimately convicted Defendant on all counts. Defendant now appeals.

## II. **ANALYSIS**

### A. *Standards of Review*

Defendant presents two arguments on appeal, contending that the trial court: (1) lacked subject matter jurisdiction to convict him of the trafficking charge given the procedural timing of the filed information; and (2) committed plain error in failing to give the jury additional instruction on the guilty knowledge element of that same crime. Each is subject to a different standard of review on appeal.

We review subject matter jurisdiction *de novo*. *State v. Herman*, 221 N.C. App. 204, 209, 726 S.E.2d 863, 866 (2012). To the extent our jurisdictional analysis requires statutory interpretation, that too is a question of law subject to *de novo* review. *Lassiter v. N.C. Baptist Hosps., Inc.*, 368 N.C. 367, ___, 778 S.E.2d 68, 73 (2015).

Plain error review of the trial court's jury instruction requires Defendant to show error that "had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983). Such error must be "a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Gregory*, 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996).

### B. *Subject Matter Jurisdiction and the Information*

Defendant argues that a superseding information must be filed prior to trial, and the State's failure to do so in this case deprived Defendant of his constitutional right to prosecution by indictment—his written waiver of that right notwithstanding.[1] Based on the plain language of the statute Defendant relies on for this argument, we disagree.

Defendant points to N.C. Gen. Stat. § 15A-646 (2019), which provides in pertinent part:

> If at any time before entry of a plea of guilty to an indictment or information, or commencement of a trial thereof, another indictment or information is filed in the same court charging the defendant with an offense charged or attempted to be charged in the first instrument, the first one is, with respect to the offense, superseded by the second and, upon the defendant's arraignment upon the second indictment or information, the count of the first instrument charging the offense must be dismissed by the superior court judge.

Defendant construes the statute to mean that the State can file a superseding information only "before entry of a plea of guilty to an indictment or information[,]" *id.*, and the State's failure to do so nullifies the information, as well as Defendant's waiver of the constitutional right to prosecution by indictment, while depriving the trial court of subject matter jurisdiction over the charge.[2]

---

[1] Defendant does not argue that the initial indictment or superseding information is facially invalid in any other respect.

[2] We note that a plea of guilty may be entered before or after trial has begun. *See, e.g., State v. Paige*, 180 N.C. App. 693, 639 S.E.2d 143, 2006 WL 3717551 (2006) (unpublished) (affirming a trial

Defendant's interpretation is unsupported by the plain language of the statute. Absent any ambiguity, an absurd result, or an outcome that contravenes a statute's expressed purpose,[3] we are duty-bound to give effect to that plain language. *State v. Curtis*, 371 N.C. 355, 358, 817 S.E.2d 187, 189 (2018).

Our Supreme Court has previously held that N.C. Gen. Stat. § 15A-646 merely requires the trial court to perform the "ministerial act" of dismissing an initial charging document when a superseding indictment or information is filed before trial or the entry of a guilty plea. *State v. Carson*, 320 N.C. 328, 333, 357 S.E.2d 662, 666 (1987). The statute imposes a positive duty *on the trial court*, not the State. This is in contrast to other statutes in which the General Assembly has expressly required the State to file charging documents by a particular stage of proceedings. *See* N.C. Gen. Stat. § 15A-922(d) (2019) (requiring the State to file a statement of charges upon determination of a prosecutor "*prior to* arraignment in the district court" (emphasis added)); *State v. Wall*, 235 N.C. App. 196, 200, 760 S.E.2d 386, 388 (2014) (holding the State's failure to file its statement of charges consistent with the timing requirement in N.C. Gen. Stat. § 15A-922(d) deprived the trial court of jurisdiction); *State v. Allen*, 292 N.C. 431, 433-34, 233 S.E.2d 585, 587 (1977) (holding that an

court's order denying a defendant's motion to withdraw a guilty plea that was entered during the State's presentation of evidence); *State v. Moody*, 345 N.C. 563, 481 S.E.2d 629 (1997) (holding no error on appeal from a trial in which the defendant pled guilty to first-degree murder during trial and after the State had presented testimony from multiple witnesses).

[3] Defendant does not argue any of these positions on appeal.

habitual felon indictment must be brought prior to full prosecution of the underlying substantive felony consistent with the statutory procedures established by the Habitual Felons Act).

Previous decisions by this Court suggest that such a timing requirement does not exist when there is a proper waiver of prosecution by indictment. *See, e.g., State v. Wilson*, 128 N.C. App. 688, 497 S.E.2d 416 (1998) (holding a defendant could appeal question of subject matter jurisdiction over an unindicted charge presented to the jury—even though defendant himself requested instruction on the crime at the charge conference—because defendant had *not* waived indictment under N.C. Gen. Stat. § 15A-642(c)).

We also disagree with Defendant's argument that his constitutional right to prosecution by indictment has been violated. Article I, Section 22 of the Constitution of North Carolina provides that "[e]xcept in misdemeanor cases initiated in the District Court Division, no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment." That section also states, however, that "any person, when represented by counsel, may, under such regulations as the General Assembly shall prescribe, waive indictment in noncapital cases." *Id.* Under our statutes, such a waiver is accomplished if it is "in writing and signed by the defendant and his attorney" and "attached to or executed upon the bill of information." N.C. Gen. Stat. § 15A-642(c) (2019). Here, Defendant's waiver complies

with the constitutional and statutory requirements for waiving prosecution by indictment, as he was represented by counsel and executed a written waiver on the superseding bill of information. While Defendant now protests that he was never made aware that he was waiving "his right to have a superseding information timely filed" and thus did not knowingly, voluntarily, and intelligently waive prosecution by indictment, he identifies no constitutional provision requiring the pre-trial filing of a superseding information.

Because we hold that N.C. Gen. Stat. § 15A-646 does not require the State to file a superseding information before trial in order to retain the trial court's subject matter jurisdiction, we do not reach Defendant's argument that a trial begins for purposes of the statute at or around the time the trial judge first addresses the venire.[4]

Defendant also suggests that the trial court had no subject matter jurisdiction because he was not formally arraigned on the new charge.[5] But, as pointed out by

---

[4] Regardless of whether this is the case procedurally, it is not true of trials for double jeopardy purposes. *See, e.g., State v. Courtney*, 372 N.C. 458, 463, 831 S.E.2d 260, 265 (2019) ("[J]eopardy attaches when a jury is sworn[.]" (citing *Richardson v. United States*, 468 U.S. 317, 326, 82 L. Ed. 2d 242, 251 (1984))).

[5] Although a reversal for lack of subject matter jurisdiction would not turn on issues of prejudice, we note that Defendant certainly did not suffer any here. Defendant, not the State, determined how to proceed after an hour-long discussion with his attorney. He elected to go forward on the information after the trial court pointed out that re-indictment would have given him the relief he sought in his pretrial motion for a continuance and recusal. Further, it is clear from the record and pretrial motions that Defendant and his counsel understood that methamphetamine—not MDMA—served as the basis for the trafficking charge, and the substitution of methamphetamine in the information appears to have had no impact on Defendant's defense or trial strategy.

the State, the lack of formal arraignment does not constitute reversible error when the defendant does not object and assert inadequate notice of the charge. *See, e.g., State v. Brown*, 306 N.C. 151, 174, 293 S.E.2d 569, 584 (1982) ("The failure to conduct a formal arraignment itself is not reversible error. . . . [F]ailure to do so is not prejudicial error unless defendant objects and states that he is not properly informed of the charges." (citations omitted)).[6]

*C.  Guilty Knowledge Instruction and Plain Error*

Defendant argues that the trial court committed plain error in failing to give the jury a discrete instruction on the requirement that he had guilty knowledge of the methamphetamine.  Defendant relies primarily on *State v. Coleman*, 227 N.C. App. 354, 742 S.E.2d 346 (2013), in which this Court awarded a new trial to a defendant who asserted this same plain error argument in his trial and conviction for trafficking heroin.  227 N.C. App. at 355, 742 S.E.2d at 347.  The defendant argued that the evidence showed that while he knew he possessed drugs, he did not know the drugs were heroin and the trial court should have instructed the jury it could convict only if it found that "the defendant knew that what he possessed was [heroin]."  *Id.* at 356, 742 S.E.2d at 348 (citation and quotation marks omitted;

---

[6] Nor are we troubled by the question, raised at oral argument, as to whether the superseding information was filed before or after the State's dismissal of the initial indictment; though the information was file-stamped nine minutes after the dismissal, Defendant signed the waiver and the State read the information into the record prior to the State dismissing the initial indictment.  Further, the State made clear on the record its intention that the information and dismissal be filed "at the same time[.]"

alteration in original). This Court agreed, noting that the State introduced witness testimony and videotaped evidence of "consistent assertions by defendant, admitted as substantive evidence, that he thought he was carrying marijuana and cocaine" rather than heroin. *Id.* at 360, 742 S.E.2d at 350. We then held that the error was so prejudicial as to amount to plain error because: (1) guilty knowledge was "the defendant's sole defense to the charges," and "his entire defense was predicated upon a lack of knowledge that the substance he possessed was heroin[,]" *id.* at 361-62, 742 S.E.2d at 350-51; (2) "the closing arguments by both the prosecution and defense were in apparent agreement that this was the most contested issue[,]" *id.* at 361, 742 S.E.2d at 350; (3) "[n]one of the other facts were controverted," *id.* at 363, 742 S.E.2d at 352; and (4) the prosecutor misstated the law concerning guilty knowledge in his closing arguments to the jury. *Id.*

The instant case shares some superficial similarities to *Coleman* in that Defendant argues evidence showed he did not know that methamphetamine, rather than simply marijuana, was present in his home. But unlike the defendant in *Coleman*, who did not deny knowledge of possessing a substance and instead denied knowing what it was, Defendant denied any knowledge of the existence of methamphetamine and instead argued to the jury that it belonged to Mr. Brown. Defendant's only witness did not testify that Defendant was ignorant of the nature of the methamphetamine; he instead testified that Defendant was not aware of its

existence in the home at all. Defendant brought motions to dismiss the charges for insufficiency of the evidence at the close of each party's case, arguing in both instances that the State had failed to prove Defendant possessed the drugs. In closing argument, Defendant's counsel emphatically argued to the jury that "the [S]tate must show that Mr. Stallings is the man that should be convicted. And Mr. Stallings is not that man. . . . Mr. Stallings is not that man because Mr. Brown has taken responsibility for the methamphetamine." *Coleman* is inapposite to this case.

In any event, even assuming *arguendo* that the trial court erred in not giving a specific instruction on guilty knowledge in light of this evidence, it does not rise to the level of plain error that "had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79.

The State offered copious evidence that Defendant was the only occupant of the home where the drugs were found when it impeached Mr. Brown's testimony and Defendant's version of events. For example, the State showed that: (1) Defendant repeatedly told police that his roommate was "Michael Smith," but no Michael Smith was ever found; (2) police found no items in the home bearing Mr. Brown's name; (3) Defendant's name was the only name on the lease, the mail, and all paperwork found in the home; (4) Defendant acknowledged smoking marijuana, his phone contained dozens of text messages about marijuana sales, and police found both marijuana and a white crystalline substance on a scale in the home; (5) Mr. Brown denied knowing

about any scales in the home when questioned on cross-examination; and (6) police found a white crystalline substance inside a pill bottle with Defendant's name on it. In short, Defendant's defense and the State's evidence at trial distinguish this case from *Coleman* and place it outside " 'the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *Odom*, 307 N.C. at 660-61, 300 S.E.2d at 378 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)).

### III. <u>CONCLUSION</u>

Defendant's argument that his right to prosecution by indictment was violated by the filing of superseding information after the judge's address to the venire but before jury selection is misplaced. N.C. Gen. Stat. § 15A-646, unlike some procedural statutes governing other charging documents, does not impose a filing deadline on the State, and Defendant waived in writing his constitutional right to prosecution by indictment. We therefore hold the trial court did not lack subject matter jurisdiction to try and convict Defendant of trafficking methamphetamine. We further hold that Defendant has failed to demonstrate plain error warranting a new trial based on the absence of a jury instruction on guilty knowledge.

NO ERROR; NO PLAIN ERROR.

Judges STROUD and DILLON concur.